IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

JEDIDIAH MURPHY,       §
      *Plaintiff,*       §
      §       CIV. ACT. NO. 1:23–CV–01199
v.       §       **DEATH PENALTY CASE**
      §
BOBBY LUMPKIN et al.,       §
      *Defendants.*       §

**DEFENDANT'S RESPONSE IN OPPOSITION TO MURPHY'S MOTION FOR A STAY OF EXECUTOIN AND BRIEF IN SUPPORT**

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

JOSH RENO
Deputy Attorney General
for Criminal Justice

EDWARD L. MARSHALL
Chief, Criminal Appeals Division

*ALI NASSER
Assistant Attorney General
Criminal Appeals Division

P.O. Box 12548, Capitol Station
Austin, Texas 78711–2548
(512) 936–1400

*Counsel of Record

————————————————

ATTORNEYS FOR DEFENDANTS

————————————————

TABLE OF AUTHORITIES ......................................................................... iii

RESPONSE IN OPPOSITION TO MOTION FOR STAY ........................... 1

STATEMENT OF THE CASE ...................................................................... 2

ARGUMENT ............................................................................................. 4

    I.    **Murphy's Dilatoriness Requires the Summary Denial of His Stay Motion.** ..................................................................... 4

    II.   **Alternatively, the Court Should Deny a Stay Because the Equities Do Not Favor Murphy.** ........................................ 5

        A.    **Standard of review.** ........................................................... 5

        B.    **Concerning his facial or freestanding attack on Texas's lethal injection protocol and his claims based on state statute, Murphy fails to present a substantial case or make a strong showing that he is likely to succeed on the merits of because he is time-barred.** ................................................. 6

        C.    **On several claims, Murphy fails to present a substantial case or make a strong showing that he is likely to succeed on the merits because he has not exhausted his administrative remedies.** ......... 8

        D.    **Murphy has not made a strong showing that he will succeed on the merits.** .............................................. 10

            1.    **Murphy's execution does not violate the Eighth Amendment. (Claim 1)** ........................................... 10

            2.    **Murphy's allegation that his execution violates due process and the Equal Protection Clause because TDCJ's use and handling of the execution drugs fails to make out a valid (Claims 2 & 3).** ......................................... 13

i

3.      **Murphy's access to courts claim is meritless. (Claim 4)** .................................................. 14

4.      **This Court does not have free-ranging authority to correct alleged violations of state law. (Claim 5)** .................................................. 15

E.    **Murphy will not suffer irreparable harm.** ................. 15

F.    **The State and the public have a strong interest in seeing the state court judgment carried out.** ....... 16

**CONCLUSION** ................................................................ 18

**CERTIFICATE OF SERVICE** ...................................... 20

# TABLE OF AUTHORITIES

**Cases**

*Barefoot v. Estelle*, 463 U.S. 880 (1983) ................................................................ 5, 15

*Barr v. Lee*, 140 S. Ct. 2590 (2020)................................................................ 6, 10, 11

*Baze v. Rees*, 553 U.S. 35 (2008)............................................................ 10, 11, 12, 15

*Bible v. Davis*, 739 F. App'x 766 (5th Cir. 2018)...................................................... 4, 16

*Booth v. Churner*, 532 U.S. 731 (2001) ................................................................ 8

*Bucklew v. Precythe*, 139 S. Ct. 1112 (2019) ............................................ 6, 10, 11, 16

*Crutsinger v. Davis*, 936 F.3d 265 (5th Cir. 2019) ...................................................... 16

*Dillon v. Rogers*, 596 F.3d 260 (5th Cir. 2010) ................................................................ 9

*Ex parte Chi*, 256 S.W.3d 702 (Tex. Crim. App. 2008) ................................................ 14

*Ex parte Murphy,* No. WR-70,832-01, 2009 WL 766213 (Tex. Crim. App. March 25, 2009) ................................................................................................................ 2

*Ex parte Murphy*, No. WR-70,832-02, 2010 WL 3905152 (Tex. Crim. App. Oct. 6, 2010) ................................................................................................................ 2

*Ex parte Murphy*, No. WR-70,832-02, 2012 WL 982945 (Tex. Crim. App. Mar. 21, 2010) ................................................................................................................ 2

*Glossip v. Gross*, 576 U.S. 863 (2015) ............................................................ 10, 12

*Gomez v. United States Dist. Court*, 503 U.S. 653 (1992) ......................................... 16

*Gonzalez v. Seal*, 702 F.3d 785 (5th Cir. 2012)............................................................ 8

*Hill v. McDonough*, 547 U.S. 573 (2006)................................................ 4, 5, 6, 17

*Hilton v. Braunskill*, 481 U.S. 770 (1987)................................................................ 6

*John Corp. v. City of Houston*, 214 F.3d 573, 577 (5th Cir. 2000) ........................... 13

*Jones v. Bock*, 549 U.S. 199 (2007)...................................................................8

*Kerr v. Thaler*, 384 F. App'x 400 (5th Cir. 2010) ......................................11

*Martel v. Clair*, 565 U.S. 648 (2012) ...........................................................17

*Murphy v. Davis*, 139 S. Ct. 1263 (2019) .....................................................3

*Murphy v. Davis*, 901 F.3d 578 (5th Cir. 2018) ...........................................3

*Murphy v. Davis*, No. 3:10-cv-163-N, 2017 WL 291171 (N.D. Tex. Jan. 23, 2017) .....3

*Murphy v. State,* 112 S.W.3d 592 (Tex. Crim. App. 2003) ..........................2

*Murphy v. State*, No. AP-77,112, 2023 WL 6241994 (Tex. Crim. App. Sep. 26, 2023) 3

*Murphy v. Texas*, 541 U.S. 940 (2004) .........................................................2

*Nken v. Holder*, 556 U.S. 418 (2009) .............................................................6

*Nordlinger v. Hahn*, 505 U.S. 1 (1992) .......................................................13

*Ochoa v. Collier*, 802 F. App'x 101 (5th Cir.) ..............................................15

*Raby v. Livingston*, 600 F.3d 552 (5th Cir. 2010) .......................................11

*Ramirez v. Collier*, 142 S. Ct. 1264 (2022) ..............................................8, 9

*Rhines v. Weber*, 544 U.S. 269 (2005) .........................................................17

*Ringo v. Lombardi*, 677 F.3d 793 (8th Cir. 2012)......................................11

*Rivas v. Thaler*, 432 F. App'x 395 (5th Cir. 2011) ......................................11

*Ross v. Blake*, 136 S. Ct. 1850 (2016).............................................................9

*Sells v. Livingston*, 750 F.3d 478 (5th Cir. 2014) .........................................7

*Sepulvado v. Jindal*, 729 F.3d 413 (5th Cir. 2013)....................................11

*Swearingen v. Collier*, 4:19–CV–3079, 2019 WL 3935285 (S.D. Tex. Aug. 20, 2019) 7, 12

*Texas Entertainment Association, Incorporated v. Hegar*, 10 F.4th 495 (5th Cir. 2021) ................................................................................................... 13

*Thorson v. Epps*, 701 F.3d 444 (5th Cir. 2012) ......................................... 11

*United States v. Vialva*, 976 F.3d 458 (5th Cir. 2020) ............................... 17

*Walker v. Epps*, 550 F.3d 407 (5th Cir. 2008) ............................................. 6

*Whitaker v. Collier*, 862 F.3d 490 (5th Cir. 2017) .......................... 6, 12, 13

*Whitaker v. Livingston*, 597 F. App'x 771 (5th Cir. 2015) ......................... 4

*Wood v. Collier*, 836 F.3d 534 (5th Cir. 2016) ......................................... 11

*Woodford v. Ngo*, 548 U.S. 81 (2006) ........................................................ 8

*Wright v. Hollingsworth*, 260 F.3d 357 (5th Cir. 2001) ............................. 9

## Statutes

28 U.S.C. § 2253 ........................................................................................ 6

42 U.S.C. § 1983 ..................................................................................... 1, 6

42 U.S.C. § 1997e(a) ................................................................................... 8

Tex. Code Crim. Proc. Art. 11.05 ............................................................. 3

Tex. Gov't Code § 501.008 ........................................................................ 9

## Rules & Regulations

The Prison Litigation Reform Act ...................................................... 15, 16

**RESPONSE IN OPPOSITION TO MOTION FOR STAY**

Jedidiah Murphy is a Texas inmate convicted and sentenced to death for the capital murder of eighty-year-old Bertie Cunningham. Pursuant to the order of the trial court, Murphy is scheduled to be executed sometime after 6:00 P.M. on October 10, 2023. As shown below, Murphy has already availed himself of the full panoply of state and federal appeals available to death-row inmates in Texas, including a subsequent state writ proceeding and a Chapter 64 DNA proceeding.

A mere six days before his execution, Murphy filed this, his second federal civil rights lawsuit in eight days. In this new complaint, Murphy claims that a fire compromised the drugs that the prison will use to conduct his execution. Complaint Pursuant to 42 U.S.C. § 1983 (Compl.) at 25–28, ECF No. 1. He also asserts due process and equal protection violations because the prison purportedly does not adhere to state law in its handling and use of the execution drugs. *Id.* at 28–29. Finally, he asserts that there is no state remedy for his claims, and therefore he has been deprived of access to the state courts and may seek redress in this federal court. *Id.* at 29–30. Now, a mere five days before his execution, Murphy moves for a stay of execution as well. *See generally* Mot.

However, no stay of execution is warranted. Much of Murphy's complaint raises state-law claims that are untimely, unexhausted, and noncognizable in federal court. Moreover, his claims that the lethal injection drugs are expired or "fire-blighted", while already foreclosed by precedent, are also rebutted by Defendants' recent retesting of the drugs, which verified the drugs' potency and sterility.

Murphy's request is also for abusive delay, as he moves for a stay of execution only five days' from his scheduled execution, citing to a fire that occurred over a month ago, statutory language that has been around for years, and an execution policy materially unchanged in more than decade. Moreover, Murphy's lawsuit seeks to unnecessarily delay his execution, fails to acknowledge binding Supreme Court and circuit precedent that directly prohibits relief, and offers no nonfrivolous arguments that these authorities do not bind this Court. *See* Fed. R. Civ. P. 11(b). Accordingly, Murphy's request for a stay should be denied.

## STATEMENT OF THE CASE

Murphy was convicted and sentenced to death in June 2001, for the October 4, 2000 capital murder of Bertie Cunningham. *See* 60 RR 70. Murphy's conviction was affirmed on direct appeal on June 25, 2003. *See Murphy v. State,* 112 S.W.3d 592 (Tex. Crim. App. 2003). He sought certiorari review of that decision, and that petition was denied on March 22, 2004. *Murphy v. Texas*, 541 U.S. 940 (2004). On March 25, 2009, the Court of Criminal Appeals (CCA) denied Murphy's first application for state-habeas relief. *Ex parte Murphy,* No. WR-70,832-01, 2009 WL 766213 (Tex. Crim. App. March 25, 2009).

Murphy then petitioned for habeas corpus relief in federal district court. The district court stayed federal proceedings so that Murphy could file a subsequent state habeas application. *Ex parte Murphy*, No. WR-70,832-02, 2010 WL 3905152, at *1 (Tex. Crim. App. Oct. 6, 2010). The CCA remanded proceedings for a determination of whether Murphy's subsequent application should be barred as an abuse of the writ.

*Id.* After an evidentiary hearing in the trial court, the CCA adopted the trial court's recommendation that Murphy's application be dismissed as an abuse of the writ. *Ex parte Murphy*, No. WR-70,832-02, 2012 WL 982945, at *1 (Tex. Crim. App. Mar. 21, 2010).

Murphy's case then returned to federal court, where his petition for federal habeas relief was denied in 2017. *Murphy*, 2017 WL 291171. The Fifth Circuit affirmed the district court's denial of Murphy's petition. *Murphy*, 901 F.3d at 599. Finally, the Supreme Court denied Murphy certiorari review of that determination in 2019. *Murphy v. Davis*, 139 S. Ct. 1263 (2019).

In February 2023, the State moved to set an execution date. On March 24, 2023, Murphy moved in the trial court for DNA testing of evidence related to an extraneous offense. On April 21, 2023, the trial court denied Murphy's motion for DNA testing and issued an order setting his execution for October 10, 2023. Murphy appealed the denial of DNA testing, and the CCA affirmed the denial on September 26, 2023. *Murphy v. State*, No. AP-77,112, 2023 WL 6241994 (Tex. Crim. App. Sep. 26, 2023).

On September 27, 2023, thirteen days before his scheduled execution, Murphy filed a third state application, which the CCA denied on October 4. *Ex parte Murphy,* No. WR-70,832-05 (Tex. Crim. App. 2023). Murphy additionally filed an application under Tex. Code Crim. Proc. Art. 11.05 and a motion to withdraw the execution date in the trial court. He has also filed separate civil rights lawsuit in this Court challenging the state court's denial of DNA testing. *See* Complaint, *Murphy v. Jones*,

1:23-cv-01170 (W.D. Tex. Sep. 27, 2023), ECF No. 6. Murphy's instant complaint was filed on October 4, 2023. Compl. at 34. His stay motion was filed on October 5, 2023. *See* Mot.to Stay Execution (Mot.).

## ARGUMENT

### I. Murphy's Dilatoriness Requires the Summary Denial of His Stay Motion.

To the extent that Murphy requests a stay or relief based on a facial or free-standing challenge to Texas's lethal injection protocol or based on longstanding Texas state law, his request is dilatory and should be summarily denied. In *Hill*, the Supreme Court stated that "[t]he federal courts can and should protect States from dilatory or speculative suits[.]" *Hill v. McDonough*, 547 U.S. 573, 585 (2006). And the Fifth Circuit has previously endorsed the denial of a stay of execution based solely on a lack of timeliness, independent of other factors, without considering the merits of the underlying claims. *See Bible v. Davis*, No. 4:18-CV-1893, 2018 WL 3068804, at *5 (S.D. Tex. Jun. 21, 2018) (capital plaintiff's "unnecessary delay in filing suit and seeking equitable relief is an independent basis on which the Court will deny relief"); *Bible v. Davis*, 739 F. App'x 766, 770 (5th Cir. 2018) ("We see no error in the district court's conclusion that [plaintiff]'s suit constitutes a dilatory tactic and therefore warrants no equitable relief."); *see also Whitaker v. Livingston*, 597 F. App'x 771, 774 (5th Cir. 2015) ("If [plaintiff] were to wait until an execution date was set to file this action, he would be unable to stay the execution under this court's clearly established precedent to pursue these claims.").

Murphy's current request merits the same treatment. Instead of bringing this suit in a timely manner, Murphy did "the very thing the plaintiff is not entitled to do . . . namely, to wait until his execution is imminent before suing to enjoin the state's method of carrying it out." *Harris*, 376 F.3d at 417 (citation omitted). Specifically,

> [b]y waiting until the execution date was set, [Murphy] left the state with a [Hobson's] choice: It could either accede to [his] demands and execute him in the manner he deems most acceptable, even if the state's methods are not violative of the [Constitution]; or it could defend the validity of its methods on the merits, requiring a stay of execution until the matter could be resolved at trial. Under [Murphy's] scheme, and whatever the state's choice would have been, it would have been the timing of [his] complaint, not its substantive merit, that would have driven the result.

*Id.* "By waiting as long as he did, [Murphy] leaves little doubt that the real purpose behind his claim[s] is to seek a delay of his execution, not merely to effect an alteration of the manner in which it is carried out." *Id.* at 418. Thus, he is not entitled to a stay.[1]

## II. Alternatively, the Court Should Deny a Stay Because the Equities Do Not Favor Murphy.

### A. Standard of review

"Filing an action that can proceed under § 1983 does not entitle the [plaintiff] to an order staying an execution as a matter of course." *Hill*, 547 U.S. at 584. Instead, such a movant has the burden of persuasion on his stay request, and he is required

---

[1] Murphy's good-cause statement, that he only filed so late because he was waiting on the state trial court's resolution of the same claims, Mot. at 6–7, is specious. Murphy could have filed his claims in federal court at *any time* since the August 25, 2023 fire. His "expired drugs" argument was exhausted in June of this year. And he challenges noncompliance of statutes that have been around for years. *See infra* Part II.B.

to make "a clear showing" that he is entitled to a stay of execution. *Hill*, 547 U.S. at 584. "It is well-established" that petitioners on death row must show a "reasonable probability" that the underlying issue is "sufficiently meritorious" to warrant a stay and that failure to grant the stay would result in "irreparable harm." *Barefoot v. Estelle*, 463 U.S. 880, 895 (1983), *superseded on other grounds by* 28 U.S.C. § 2253(c)(2). Moreover, in determining whether a movant has made such a showing, a reviewing court "must be sensitive to the State's strong interest in enforcing its criminal judgments without undue interference from the federal courts." *Hill*, 547 U.S. at 584. (citing *Nelson v. Campbell*, 541 U.S. 637, 649–50 (2004)). Thus, in deciding whether to grant a stay of execution, the Court must consider four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 434 (2009) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)).

"Last-minute stays should be the extreme exception, not the norm[.]" *Bucklew v. Precythe*, 139 S. Ct. 1112, 1134 (2019); *see also Barr v. Lee*, 140 S. Ct. 2590, 2591 (2020).

**B.** **Concerning his facial or freestanding attack on Texas's lethal injection protocol and his claims based on state statute, Murphy fails to present a substantial case or make a strong showing that he is likely to succeed on the merits of because he is time-barred.**

The Fifth Circuit holds that a statute of limitations applies to § 1983 method-of-execution challenges, and such attacks are appropriately filed either after a

plaintiff's conviction and sentence become final on direct review, or the date that an execution protocol change becomes effective. *See Walker v. Epps*, 550 F.3d 407, 411–15 (5th Cir. 2008). Because § 1983 has no statute of limitation, Texas' two-year statute for personal-injury actions governs this challenge. *Whitaker v. Collier*, 862 F.3d 490, 494 (5th Cir. 2017). In this case, the statute of limitations began to run on the later of the two relevant dates—when the protocol changed July 9, 2012, *see Sells v. Livingston*, 750 F.3d 478, 480–81 (5th Cir. 2014)—and expired on July 9, 2014. Consequently, Murphy's time for seeking relief on this claim has already expired. *See, e.g., Swearingen v. Collier*, 4:19–CV–3079, 2019 WL 3935285, at *4 n.8 (S.D. Tex. Aug. 20, 2019) ("The defendants convincingly argue that Swearingen's claims are time-barred. A two-year limitations period exists for the relevant portions of Texas' protocol. Despite recent changes to an unrelated portion of the Texas protocol, the core issues at play have been available to Swearingen since 2012, at least."). To the extent that Murphy makes a facial or freestanding lethal injection claim, he is time-barred.

Moreover, Murphy's complaints about violations of Texas state law also appear to be time-barred. Several of Murphy's cited statutes have been in effect for many years, for instance:

- Murphy argues that Section 558.001(c) of the Occupations Code prohibits TDCJ from legally dispensing, distributing, or transferring controlled drugs. Compl. at 23 n.71. Section 558.001(c) restricts who may dispense or distribute prescription drugs. Tex. Occ. Code § 558.001(c). But that statutory language has been in effect since 1999. Act of 1999, 76th Leg., ch. 388 § 1, 1999 Tex. Law Serv. Ch. 388 (codified as Tex. Occ. Code § 558.001(c)).

- Murphy argues that Section 481.074(b) of the Health & Safety Code requires

a prescription for TDCJ to dispense or administer pentobarbital. Compl. at 24 n.74. But that statutory language has been in effect since at least 2001. Act of 2001, 77th Leg., R.S., ch. 251, § 10, 2001 Tex. Sess. Law Serv. 2001 (codified at Tex. Health & Safety Code § 481.074).

- Murphy argues that Section 431.113(c)(1) of the Texas Health & Safety Code requires that a prescription be obtained for pentobarbital. Compl. at 24 n.76. But that statutory language has been in effect since 2003. Act of 2003, 78th Leg., R.S., ch. 111, § 5, 2003 Tex. Sess. Law Serv. Ch. 111 (codified at Tex. Health & Safety Code § 431.113).

- Murphy argues that Section 38.11(a)(1) of the Texas Penal Code restricts TDCJ from administering pentobarbital because it is not a "practitioner" under the Health and Safety Code. Comp. at 24. The exact language of this statute went into effect September 1, 2009. Act of 2009, 81st Leg., R.S., ch. 1169 § 1, 2001 Tex. Sess. Law Serv. Ch. 1169 (codified at Tex. Penal Code § 38.11).

Thus, Murphy's state law claims were previously available and are now time-barred.[2]

### C. On several claims, Murphy fails to present a substantial case or make a strong showing that he is likely to succeed on the merits because he has not exhausted his administrative remedies.

Section 1997(e) of the PLRA[3] provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see also Ramirez v. Collier*, 142 S. Ct. 1264, 1275–76 (2022). Exhaustion is *mandatory* "irrespective of the forms of relief sought and offered through administrative

---

[2]     Murphy might respond that the fire on which he relies occurred on August 25, 2023. But, if that were his reason for delay, he would have scrapped his time-barred claims and raised the "fire-blighted" arguments alone. That Murphy inexcusably throws in the kitchen sink five days from his scheduled execution betrays his true intent: Delay.

[3]     The Prison Litigation Reform Act.

avenues." *Booth v. Churner*, 532 U.S. 731, 739–40 n.6 (2001); *see Gonzalez v. Seal*, 702 F.3d 785, 788 (5th Cir. 2012) ("[T]here can be no doubt that pre-filing exhaustion of [the] prison grievance processes is mandatory.") (citing *Woodford v. Ngo*, 548 U.S. 81 (2006) & *Jones v. Bock*, 549 U.S. 199 (2007)). The PLRA's exhaustion requirement applies to Murphy's challenges to TDCJ's execution procedure. *See Nelson*, 541 U.S. at 643, 650 (concluding that a prisoner's complaint about the procedure used to find a vein during the execution process was a § 1983 civil rights complaint and subject to the PLRA exhaustion requirement); *Ross v. Blake*, 136 S. Ct. 1850, 1862 (2016) ("Courts may not engraft an unwritten 'special circumstances' exception onto the PLRA's exhaustion requirement.").

Murphy may only exhaust via TDCJ's grievance process. Tex. Gov't Code § 501.008; *see Dillon v. Rogers*, 596 F.3d 260, 268 (5th Cir. 2010) ("Under our strict approach, we have found that mere 'substantial compliance' with administrative remedy procedures does not satisfy exhaustion."). And to properly exhaust, a prisoner must "pursue the grievance remedy to conclusion." *Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001). This requires completion of both steps of TDCJ's grievance process before a complaint may be filed. *Id.*; *see also Ramirez*, 142 S. Ct. at 1276. According to Defendants' information, Murphy only filed a Step 1 grievance before filing suit, and he did not do so until September 18, 2023. Def. Ex. B. The prison has not yet responded, and the due date for the response is October 29, 2023.

Moreover, this grievance only complains about the fire potentially damaging the execution drugs and does mention Murphy's facial lethal injection challenge or

many of his complaints alleging the protocol violates state law.[4] Consequently, this grievance would not serve to exhaust those complaints even if Murphy had a valid protest that the prison did not respond quick enough to his filed grievance. Compl. at 2.

Because Murphy did not properly exhaust administrative remedies prior to bringing his claims in federal court, PLRA mandates dismissal of the complaint. If the merits of his complaint cannot be considered due to a lack of exhaustion, Murphy cannot make the required substantial showing required by the harm analysis.

### D. Murphy has not made a strong showing that he will succeed on the merits.

#### 1. Murphy's execution does not violate the Eighth Amendment. (Claim 1)

The Supreme Court "has yet to hold that a State's method of execution qualifies as cruel and unusual." *Bucklew*, 139 S. Ct. at 1124 (affirming denial of challenge to single-drug pentobarbital challenge); *see also Lee*, 140 S. Ct. at 2591 (holding that challenge to federal single-drug pentobarbital protocol was unlikely to succeed on the merits in preliminary injunction context). To make out an Eighth Amendment method-of-execution claim, an inmate must establish that the chosen method creates "a risk that is '*sure or very likely* to cause serious illness and needless suffering,' and give rise to 'sufficiently *imminent* dangers.'" *Glossip v. Gross*, 576 U.S. 863, 877 (2015) (emphasis in original) (quoting *Baze v. Rees*, 553 U.S. 35, 50 (2008)). This requires

---

[4]     Murphy has exhausted a grievance alleging that the prison's execution drugs are expired. Def. Ex. C. Defendants do not assert an exhaustion defense with respect to that claim.

showing "'a substantial risk of serious harm,' an 'objectively intolerable risk of harm' that prevents prison officials from pleading that they were 'subjectively blameless for purposes of the Eighth Amendment.'" *Id.* (quoting *Baze*, 553 U.S. at 50). An inmate must also provide a "'feasible, readily implemented'" execution-method alternative that is not "'slightly or marginally safer,'" but "'significantly reduce[s] a substantial risk of severe pain.'" *Id.* (quoting *Baze*, 553 U.S. at 51–52).

The Fifth Circuit previously rejected challenges to Texas's prior three-drug lethal injection process. *See generally Raby v. Livingston*, 600 F.3d 552 (5th Cir. 2010). However, at this point, Texas is currently using a single-drug pentobarbital protocol, which is also acceptable. *Bucklew*, 139 S. Ct. at 1120, 1134; *Lee*, 140 S. Ct. at 2591; *Wood v. Collier*, 836 F.3d 534, 540 (5th Cir. 2016) ("The reality is that pentobarbital, when used as the sole drug in a single-drug protocol, has realized no . . . risk" that it "is sure or very likely to cause serious illness and needless suffering, and give rise to sufficiently *imminent* dangers.") (quotation omitted); *Sepulvado v. Jindal*, 729 F.3d 413, 417 (5th Cir. 2013); *Thorson v. Epps*, 701 F.3d 444, 447 n.3 (5th Cir. 2012) ("Though Texas recently adopted a one drug protocol—also acceptable under the flexible *Baze* standard—the method at issue here exactly parallels the one cleared for use in *Raby*."). Use of pentobarbital has been upheld by many courts. *See Ringo v. Lombardi*, 677 F.3d 793, 798–99 (8th Cir. 2012) (noting that challenges to the use of pentobarbital have been denied). Moreover, the Fifth Circuit has denied certificates of appealabilty on challenges to the Texas lethal-injection protocol. *See*,

*e.g., Rivas v. Thaler*, 432 F. App'x 395, 404–05 (5th Cir. 2011); *Kerr v. Thaler*, 384 F. App'x 400, 404–05 (5th Cir. 2010).

*Baze* and *Glossip* govern all Eighth Amendment challenges, whether facial or as applied, alleging that a method of execution inflicts unconstitutionally cruel pain. *Bucklew*, 139 S. Ct. at 1122–29. Even considering Murphy's fire claim through the "as applied" lens, Murphy has not adequately demonstrated a substantial risk of serious harm. The Defendants have attached an affidavit and lab report *dated after the TDCJ fire* showing that the execution drugs were tested by an independent laboratory and remain potent and sterile. Def. Ex. A.

Moreover, Murphy's claim that use of the purportedly expired drugs violates the Eighth Amendment is foreclosed by Circuit precedent. *Whitaker*, 862 F.3d at 499 ("claim that using compounded pentobarbital after its [Beyond Use Date] risks severe pain [ ] does not include sufficient factual assertions to survive a motion to dismiss."); *Swearingen*, 2019 WL 3935285, at *3. Nevertheless, Defendants' lab report also undermines Murphy's claim that TDCJ is improperly using expired drugs in its executions—the Defendants' testing shows that, even if Murphy's allegation that the drugs are expired is true—which it is not—they remain potent and sterile. Moreover, Murphy has wholly failed to identify an execution-method alternative that is not just "'slightly or marginally safer,'" but "'significantly reduce[s] a substantial risk of severe pain.'" *Glossip*, 576 U.S. at 877 (quoting *Baze*, 553 U.S. at 51–52). This failure to identify an alternative execution-method is fatal to both his fire claim and his expired drugs claim.

2. **Murphy's allegation that his execution violates due process and the Equal Protection Clause because TDCJ's use and handling of the execution drugs fails to make out a valid claim for relief (Claims 2 & 3).**

Turning to Murphy's second claim, he fails to articulate a federal right that he is being denied. Compl. at 29–30. Murphy must show that, whatever violations by Defendants are alleged, they violate some recognized liberty interest. *District Attorney's Office for Third Judicial Dist. v. Osborne*, 557 U.S. 52, 68 (2009). Indeed, sometimes a state-afforded right creates a liberty interest in "procedures essential to the realization of the parent right." *Id.* But Murphy fails to cite any state-afforded right which gives him liberty-interest in Defendants' compliance with state law. Murphy in truth is attempting smuggle noncognizable state-law claims inside a nonexistent due process right.

Regarding Murphy's equal protection claim, his claim is factually deficient. "[T]he Equal Protection Clause protects individuals from governmental action that works to treat similarly situated individuals differently." *John Corp. v. City of Houston*, 214 F.3d 573, 577 (5th Cir. 2000). "To determine whether persons or groups are similarly situated, we inquire as to whether they 'are in all relevant respects alike.'" *Texas Entertainment Association, Incorporated v. Hegar*, 10 F.4th 495, 513 (5th Cir. 2021)) (quoting *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992)). Here, Murphy and the rest of death row have been convicted of capital murder and sentenced to death; non-capital inmates have not been convicted of capital murder and sentenced to death. Defendants *do not* administer massive overdoses of lethal-injection drugs to execute non-capital inmates; instead, they only administer therapeutic doses of drugs

for therapeutic purposes. The two groups in question are dissimilarly situated and thus treated dissimilarly.

### 3. Murphy's access to courts claim is meritless. (Claim 4)

Murphy's claim that he has been denied access to the courts is meritless. Compl. at 30–32. Murphy has not identified viable method-of-execution claim, so his access to the courts claim necessarily fails. *Whitaker*, 862 F.3d at 501. Moreover, his claim is also factually untenable—Murphy acknowledges that other death row inmates are currently pursuing their state law claims in a civil suit emanating from Travis County. Compl. at 17–21.

The CCA has entered a writ of prohibition to prevent the trial court from staying executions pending those civil suits, but the fact that Murphy cannot obtain his desired results does not mean that the courtroom doors are closed or his access is not meaningful. Murphy could have raised his state law claims in state court many years ago and obtained a ruling long before his execution was set. One who forces the State into a "Hobbesian choice" by delaying a challenge to a long-known method of execution can hardly complain when his impending execution affords insufficient time to litigate his long-available claims. *Cf Harris*, 376 F.3d at 417–18. Murphy's attempt to deflect blame to the state judicial system is patently disingenuous. Even more so given that the CCA has previously considered method-of-execution claims in the writ of prohibition context, *Ex parte Chi*, 256 S.W.3d 702, 703 (Tex. Crim. App. 2008), and Murphy has inexplicably failed to avail himself of that legal avenue by seeking such a writ.

### 4. This Court does not have free-ranging authority to correct alleged violations of state law. (Claim 5)

Murphy's fifth claim is less a claim for relief than a plea for the Court to hear his case. Compl. at 32. He seems to allege that, if § 1983 does not afford him relief, then this Court is obliged to otherwise remedy the "constitutionally intolerable" scenario in which his rights are violated with no redress. *Id.* That's nonsense. If, as explained above, Murphy cannot show a violation of his constitutional rights under § 1983, then *by definition* his situation is not "constitutionally intolerable." *See* 42 U.S.C. § 1983. If Murphy cannot obtain relief under § 1983 that is because he cannot show a violation of his constitutional rights. His "lack of remedy" is no more than the reality of one who has no meritorious federal claim for relief.[5]

### E. Murphy will not suffer irreparable harm.

In a capital case, a court may properly consider the nature of the penalty in deciding whether to grant a stay, but "the severity of the penalty does not in itself suffice." *Barefoot*, 463 U.S. at 893. Murphy cannot argue that his execution constitutes irreparable harm. This is a § 1983 action, which means that Murphy necessarily does not challenge the validity of his sentence. *Cf. Ochoa v. Collier*, 802 F. App'x 101, 106 (5th Cir. 2020), *cert. denied*, 140 S. Ct. 990 (2020). Even under the

---

[5] Murphy's gratuitous reference to the All Writs Act, 28 U.S.C. § 1651, is also unavailing. The Anti-Injunction Act, 28 U.S.C. § 2283, makes it clear that when it comes to interfering in state court proceedings, a federal court "may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress." Here, the only express authority at issue is § 1983. Murphy identifies no other.

theories of his lawsuit, when Murphy is executed, his sentence has only been lawfully fulfilled—that is not irreparable harm.

Rather, the actual harm that Murphy alleges is that will experience some pain during his execution. But "[s]ome risk of pain is inherent in any method of execution—no matter how humane—if only from the prospect of error in following the required procedure. It is clear, then, that the Constitution does not demand the avoidance of all risk of pain in carrying out executions." *Baze*, 553 U.S. at 47. "Simply because an execution method may result in pain, either by accident or as an inescapable consequence of death, does not establish the sort of 'objectively intolerable risk of harm' that qualifies as cruel and unusual.'" *Id*. at 50. Murphy's claim is entirely speculative—the Defendants have provided evidence that the execution drugs remain potent and sterile, and the prison has a long history of successful executions. "Here the [S]tate has not botched any execution since it instituted its protocol. But even if a mishap were to occur in [Plaintiff's] execution, that post-facto incident alone could not constitute evidence that he was sure or very likely to suffer needlessly ex ante." *Bible*, 739 F. App'x at 772.

**F.    The State and the public have a strong interest in seeing the state court judgment carried out.**

The State and crime victims have a "powerful and legitimate interest in punishing the guilty." *Calderon*, 523 U.S. 538, 556 (1998) (citation omitted). And "[b]oth the State and the victims of crime have an important interest in the timely enforcement of a [death] sentence." *Bucklew*, 139 S. Ct. at 1133 (quotation omitted); *see Nelson*, 541 U.S. at 650 ("a State retains a significant interest in meting out a

sentence of death in a timely fashion"); *Gomez v. United States Dist. Court*, 503 U.S. 653, 654 (1992) (per curiam) ("[e]quity must take into consideration the State's strong interest in proceeding with its judgment"). Once post-conviction proceedings "have run their course . . . finality acquires an added moral dimension." *Calderon*, 523 U.S. at 556. "Only with an assurance of real finality can the State execute its moral judgment in a case" and "the victims of crime move forward knowing the moral judgment will be carried out." *Id.* The State should be allowed to enforce its "criminal judgments without undue interference from the federal courts." *Crutsinger v. Davis*, 936 F.3d 265, 273 (5th Cir. 2019) (citations and internal quotations omitted).

Here, the public's interest lies in executing sentences duly assessed, and for which years of judicial review have found no reversible error. Murphy has already passed through the state and federal collateral review process. The public's interest is not advanced by postponing Murphy's execution any further, and the State opposes any action that would cause further delay. *Martel v. Clair*, 565 U.S. 648, 662 (2012) ("Protecting against abusive delay *is* an interest of justice.") (emphasis in original). *Twenty-three years* after the commission of Murphy's crime, justice should no longer be denied. *United States v. Vialva*, 976 F.3d 458, 462 (5th Cir. 2020).

Moreover, it bears repeating that "capital petitioners might deliberately engage in dilatory tactics to prolong their incarceration and avoid execution of a sentence of death." *Rhines v. Weber*, 544 U.S. 269, 277–78 (2005). Thus, "[t]he federal courts can and should protect States from dilatory or speculative suits[.]" *Hill*, 547 U.S. 585. As noted above, this lawsuit—belatedly filed less than a week before the

execution—is precisely the sort of "dilatory tactic" that the Supreme Court has suggested that this Court not entertain. Even if the Court does not consider Murphy's dilatory behavior an independent ground for the denial of relief, it should still weigh heavily in the Court's analysis. Any stay should be denied.

## CONCLUSION

For the foregoing reasons, the Defendants ask that the Court deny any stay of execution. Alternatively, the Court should deny any stay *and* dismiss Murphy's lawsuit. *See*, *e.g.*, *Bible*, 2018 WL 3068804, at *11 ("Because this lawsuit cannot proceed without a stay of [Plaintiff]'s execution date, dismissal of the action is warranted.").

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

JOSH RENO
Deputy Attorney General
for Criminal Justice

EDWARD L. MARSHALL
Chief, Criminal Appeals Division

/s/ Ali Nasser

\*Attorney-in-charge          \*ALI NASSER
Assistant Attorney General
Texas Bar No. 24098169

P. O. Box 12548, Capitol Station
Austin, Texas 78711
Tel: (512) 936–1400
Fax: (512) 320–8132
Email: Ali.Nasser@oag.texas.gov

ATTORNEYS FOR DEFENDANTS

**CERTIFICATE OF SERVICE**

I do hereby certify that on October 5, 2023, I electronically filed the foregoing pleading with the Clerk of the Court for the U.S. District Court, Western District of Texas, using the electronic case-filing system of the Court. The electronic case-filing system sent a "Notice of Electronic Filing" to the following attorneys of record, who consented in writing to accept this Notice as service of this document by electronic means:

Catherine Bernhard
P.O. Box 506
Seagoville, Texas 75159
972-421-1604
cbernhard@sbcglobal.net

/s/ Ali Nasser
ALI NASSER
Assistant Attorney General