## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| Jedidiah Murphy, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Case No. 1:23cv1199 (RP/SH) |
| | : | |
| Bobby Lumpkin, *et al.*, | : | **THIS IS A CAPITAL CASE** |
| | : | **WITH EXECUTION SET FOR** |
| Defendants. | : | **OCTOBER 10, 2023** |
| | : | |

### REPLY IN SUPPORT OF MOTION FOR STAY OF EXECUTION

Defendants have now confirmed in this forum – for the first time, despite repeated inquiries – that they intend to execute Mr. Murphy with pentobarbital that was exposed to a catastrophic fire on August 25th, 2023.[1]

Jedidiah Murphy's pending § 1983 action seeks to enjoin them from doing precisely that. Defendants try to cast the upcoming October 10th execution as run-of-the-mill, arguing that Mr. Murphy could have filed his suit years ago, and that there is simply "nothing to see here!". But that obfuscation just continues Defendants' suppression of meaningful information about the state of their pentobarbital post-fire.

---

[1] Defendants confirm this by implication and omission. If they had any way to argue that their pentobarbital was not exposed to the fire, that would have been their easiest and strongest argument in opposition to Mr. Murphy's Motion for Stay. They clearly do not have that argument to make.

# I.   TDCJ's pentobarbital was clearly damaged by the August 25, 2023 fire, and Defendants fail to refute that. Mr. Murphy's factually-supported claims thus clearly meet the legal test for a stay.

Defendants do not dispute that their pentobarbital was directly exposed to a massive, catastrophic building fire on August 25, 2023. Yet, even though Mr. Murphy put Defendants on clear notice that "potency" testing ***does not resolve legitimate concerns*** about their chemical's safety in the wake of that exposure, *see Complaint, paras. 50-51* (pH must be tested, and solutions visually examined for particulates), *paras. 53-56* ("potency" testing is not a stability-indicating test), the only tests TDCJ appears to have performed since the August 25, 2023 fire are potency and sterility tests. *See Exhibit A to Defendant's Opposition.*[2]

Defendants argue that Mr. Murphy's execution will not violate his constitutional rights, because prior federal challenges to Texas's method of execution have failed. *Defendants' Opposition at 10-12.* They specifically argue that Mr. Murphy's claims about drug expiration are foreclosed by Fifth Circuit precedent. *Defendants' Opposition at 12.* Neither of these arguments speak to the likelihood of success of Mr. Murphy's instant action, because Mr. Murphy's claims are different in two determinative ways:

---

[2] In addition, Defendants do not even state that the specific vials they tested are the ones they will use on October 10th, 2023, to execute Mr. Murphy. This is another flaw with their testing methods that Mr. Murphy raised in his pending Complaint. *See* Exhibit 6 to Complaint, at para. 28 (testing of any single vial is a faulty method to draw any conclusions about an entire batch of compounded pentobarbital).

1. Mr. Murphy's claims *all* arise from the August 25, 2023, fire;[3] and

2. Mr. Murphy's complaint includes non-Eighth-Amendment claims (including Claims 2, 3, and 4) that are not governed by the prior caselaw Defendants cite. For example, Claim 2 alleges that Texas is violating his procedural due process rights by failing to provide a remedy for state-created liberty interests.

Even as to Mr. Murphy's Eighth Amendment claim, to which the Defendants' legal authority is in fact applicable, the unique factual circumstances arising from the Hunstville Unit fire meet all the factors of *Nken v. Holder*, 556 U.S. 418, 434 (2009), as applied by *Young v. Gutierrez*, 895 F.3d 829, 831, and *O'Bryan v. Estelle*, 69` F.2d 706, 708 (5th Cir. 1982). *See Motion for Stay*, at 3-6 (identifying and applying the factors to this case). Defendants have not offered any persuasive argument that these unique factual circumstances fail to satisfy these governing authorities, particularly the Fifth Circuit's holding in *O'Bryan* that: "In a capital case, the possibility of irreparable injury weighs heavily in the movant's favor. . . . we must be particularly certain that the legal issues 'have been sufficiently litigated,'

---

[3] Claim 1 alleges that TDCJ is going to use fire-damaged drugs, and argues in support that the expiration of those drugs only amplifies the deleterious effects of the fire. *Complaint,* paras. 4-6; para. 39 ("Other problems with TDCJ's pentobarbital predated the Hunstville Unit fire; but those issues and the fire's damage reciprocally amplify one another."). Claim 2 alleges that TDCJ's violation of state laws violates substantive due process and equal protection, including the violation of a state-law requirement that "Any drug which has been exposed to excessive heat, smoke, or other conditions which may have caused deterioration shall not be dispensed." *Complaint*, para. 69(a). Claim 3 argues that Texas is violating Mr. Murphy's substantive due process rights because they have provided him a liberty interest against "torture, or ill treatment, or unnecessary pain," yet provide no procedure to enforce it once an execution date is set, *"even though the factual grounds for his claim did not arise until after his execution was scheduled."* Para. 84 (emphasis added). Claims 4 and 5 incorporate the factual and legal allegations already discussed.

and the criminal defendant accorded all the protections guaranteed him by the Constitution of the United States." *O'Bryan*, 681 F.2d at 708 (quoting *Evans v. Bennett*, 440 U.S. 1301, 1303 (1979) (Rehnquist, J., granting a stay of execution)).

Defendants' single argument concerning the Huntsville Unit fire – which they briefly make on Page 1 of their Opposition and then reference again only once – is that: "his claims that the lethal injection drugs are . . . 'fire-blighted' . . . are also rebutted by Defendants' recent retesting of the drugs, which verified the drugs' potency and sterility." *Opposition* at 1; *see also Opposition* at 12 ("Even considering Murphy's fire claim through the 'as applied' lens, Murphy has not adequately demonstrated a substantial risk of serious harm. The Defendants have attached an affidavit and lab report *dated after the TDCJ fire* showing that the execution drugs were tested by an independent laboratory and remain **potent** and sterile**.**") (bold emphasis added). These factual arguments do not begin to address Mr. Murphy's actual allegations, since, as noted above and in the Complaint, "potency" testing ***does not resolve legitimate concerns*** about a chemical's safety in the wake of extreme heat exposure. *See Complaint, paras. 50-51* (pH must be tested, and solutions visually examined for particulates), *paras. 53-56* ("potency" testing is not a stability-indicating test).[4]

---

[4] Sterility testing is beside the point, as that concerns only the presence of foreign bacterial contamination – not a change in chemical structure nor the presence of chemical particulates in the suspension. *See Defendants' Exhibit A,* noting sterility testing for "bacterial endotoxins."

II.    **All of Mr. Murphy's claims arose from the August 25, 2023 fire; and he has acted diligently since learning about that event.**

Defendants erroneously accuse Mr. Murphy of "abusive delay," both because he filed his stay motion "over a month" after the catastrophic fire, and because he apparently could have filed his claims years before the fire even occurred. Instead, both Mr. Murphy and his counsel began investigating the fire immediately upon hearing about it (from news media), including by filing Public Information Act requests and waiting as long as reasonably possible for Defendants' responses before filing this federal action. It is the Defendants who failed to timely comply (or to comply at all) with these PIA requests. In light of Defendants' total lack of responsiveness or transparency, Mr. Murphy had no choice but to file the instant civil rights action when he did.

These are the specific steps that Mr. Murphy and his counsel took upon learning of the August 25, 2023, fire:

- Counsel immediately began investigation (through media reports, preliminary witness interviews, and requests for information from responding fire departments) into the extent of the fire, including whether it directly impacted the administration offices at the prison where the pentobarbital was believed to be stored;

- Beginning on September 8th, 2023, counsel diligently submitted Public Information Act requests to TDCJ, to which she has yet to receive any substantive response, *see Complaint* at paras. 30-38;

- On September 19, 2023, Mr. Murphy filed an inmate grievance specifically about the impact of the fire on TDCJ's pentobarbital, which, Defendants note, they are not legally required to address

before his scheduled execution, *See Defendant's Exhibit B*.[5] Mr. Murphy had also informally tried to raise this issue with TDCJ staff, as noted in his grievance form, *id.*;

- Counsel research, drafted and filed a writ petition on the subject in the Dallas County District Court on September 27, 2023, *Ex Parte Murphy*, No. W-0002424-D;

- Concerned about the approaching execution date, counsel filed the instant civil rights action in this Court on October 4, 2023, even though the state district court had yet to rule on the pending state writ;

- Counsel then filed the instant Motion to Stay Execution on October 5, 2023.

In summary, there is little (if anything) more that Mr. Murphy or his counsel could do to demonstrate diligence concerning this unanticipated catastrophic event at a TDCJ facility.

### III.   Mr. Murphy has done everything humanly possible to exhaust his administrative remedies with regard to all of his claims.

On September 19, 2023, after informally raising his complaint with prison staff, Mr. Murphy filed a Step 1 inmate grievance specifically about the impact of the fire on TDCJ's pentobarbital. *Defendants' Exhibit B*. As Defendants have already noted, TDCJ's deadline to respond to this grievance falls after the scheduled execution date. *Defendant's Opposition*, at 9 (deadline for TDCJ's response to the

---

[5] Back on May 25, 2023, Mr. Murphy independently grieved the fact that TDCJ's pentobarbital was expired. On June 23, 2023, he filed a Step 2 Grievance on the same issue. *State's Exhibit C*.

Step 1 grievance is October 29, 2023); and it appears they do not plan to address it sooner. *See Defendant's Exhibit B*.

Mr. Murphy is incarcerated – not at the prison where the fire took place – with limited access to communication and news; and even his counsel had trouble discovering clear information about the event. Yet, Mr. Murphy still managed to file his Step 1 Grievance approximately three weeks after the fire. There are no further procedural steps he can take until TDCJ responds to his Step 1 grievance, the timing of which is entirely out of his control; thus, he has followed every step of the administrative remedy's process that any human being in his situation could. As was the case in *Ramirez v. Collier*, "In the context of Texas's grievance system, that is enough." *Ramirez v. Collier*, 142 S. Ct. 1264, 1276 (2022). Furthermore, like in *Ramirez*, Mr. Murphy clearly would be able to amend his Complaint once TDCJ acts on his pending grievance. According to the Supreme Court in *Ramirez*, that would "cure" any existing exhaustion defect. *Id*.[6]

Defendants separately argue that Mr. Murphy failed to fully exhaust the portion of his claims concerning TDCJ's violation of a myriad state laws governing

---

[6] Further, as Justice Sotomayor noted in her concurring opinion in *Ramirez*, TDCJ's delay in responding to Mr. Murphy's Step 1 grievance "raises questions" and "creates an impression, whether valid or not, that the prison is trying to 'thwart inmates from taking advantage of [the] grievance process' and cut short their opportunity to obtain judicial review." 142 S. Ct. at 1285 (Sotomayor, J., concurring) (quoting *Ross v. Blake*, 578 U. S. 632, 644 (2016)). "If an administrative system does not permit complete exhaustion of execution-related claims in a timely manner before a scheduled execution, it may be unavailable for the purposes of those claims even if it would be available for other types of claims." *Id*. at n.* (Sotomayor, J., concurring).

safe use of pentobarbital, though they acknowledge that he did fully exhaust his argument that the drugs are expired. *Defendants' Opposition* at 9-10 & n.4. Defendants' technical parsing of Mr. Murphy's claim is disingenuous. His arguments concerning state-law violations are not independent civil rights claims in the instant action; they are instead factual assertions (*see paragraph 69 of his Complaint*) supporting his federal constitutional claims. Mr. Murphy sufficiently exhausted his federal constitutional claims – including those partially based on TDCJ's violations of state law – months ago by taking the following grievance through the full TDCJ step 1 and step 2 processes:

> I believe TDCJ is using expired drugs for executions. TDCJ is not following execution protocols. I believe the lethal drugs are not pentobarbitol [sic]. For these reasons, my execution will violate State law and my Texas and Federal Constitutional rights.

*Defendants' Exhibit C*, Step 1 Grievance dated May 25, 2023.

> The response is insufficient because TDCJ continues to incorrectly define the term "expired." I believe TDCJ is using expired drugs for executions. TDCJ is not following execution protocols. I believe the lethal drugs are not pentobarbitol [sic]. For these reasons, my execution will violation State law and my Texas and Constitutional rights.

*Defendants' Exhibit C*, Step 2 Grievance dated June 23, 2023.

Respectfully Submitted,

Katherine Froyen Black                    Catherine Clare Bernhard
205 Blue Ridge Trail                      P.O. Box 506
Austin, Texas 78746                       Seagoville, Texas 75159
415-847-6127                              972-294-7262
kfroyen@gmail.com                         fax – 972-421-1604
Texas Bar No. 24099910                    cbernhard@sbcglobal.net
                                          Texas State Bar No. 02216575

*Pro Hac Vice pending*

## CERTIFICATE OF SERVICE

I hereby certify that on this date, the 6th day of October, 2023, I effected service of the foregoing pleading on the following counsel for all Defendants by email (and/or ECF notification) to:

> Ali Nassir, Assistant Attorney General
> Office of the Attorney General of Texas
> Post Office Box 12548, Capitol Station
> Austin, Texas 78711
> Tel: (512) 936-2134
> Ali.Nasser@oag.texas.gov

10

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| Jedidiah Murphy, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Case No. _____ |
| | : | |
| Bobby Lumpkin, Director of | : | |
| Correctional Institutions, | : | |
| Texas Dept. of Criminal Justice, | : | |
| | : | **THIS IS A CAPITAL CASE** |
| Kelly Strong, Warden, Texas State | : | |
| Penitentiary    Huntsville Unit, | : | |
| | : | **EXECUTION SET FOR** |
| Bryan Collier, Executive Director, | : | **OCTOBER 10, 2023** |
| Texas Dept. of Criminal Justice, | : | |
| | : | |
| Defendants. | : | |

**[PROPOSED] ORDER ON MOTION FOR STAY OF EXECUTION**

In conjunction with his civil rights complaint pursuant to 42 U.S.C. § 1983 (Docket Entry

__), Jedidiah Murphy has filed a Motion for a Stay of Execution, scheduled for October 10, 2023.

Upon due consideration, the Court GRANTS the Motion and VACATES the April 21, 2023 order

setting his execution and RECALLS the warrant of execution issued on May 1, 2023.

It is so ordered.

Signed on this _____ day of _____ 2023.

_____
Hon. Robert Pitman, United States District Judge