**FILED**
October 06, 2023
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY: _____Julie Golden_____
DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| **JEDIDIAH MURPHY,** <br> TDCJ No. 999392, <br><br> **Plaintiff,** <br><br> v. <br><br> **BOBBY LUMPKIN, Director,** <br> Texas Department of Criminal Justice, <br> Correctional Institutions Division; <br><br> **KELLY STRONG, Warden,** <br> Huntsville Unit; and <br><br> **BRYAN COLLIER, Executive Director,** <br> Texas Department of Criminal Justice, <br><br> **Defendants.** | § § § § § § § § § § § § § § § § § § § § | **CIVIL NO. A-23-cv-01199-RP** <br><br> * **CAPITAL CASE** * <br><br> **EXECUTION SET FOR OCTOBER 10, 2023** |

## ORDER ON MOTION TO STAY EXECUTION

Plaintiff Jedidiah Murphy, a Texas death-row inmate, is scheduled to be executed on October 10, 2023. Six days before his scheduled execution, Murphy filed a civil-rights complaint under 42 U.S.C. § 1983, arguing that the method of his execution via pentobarbital violates his constitutional rights and Texas state laws, and that state officials are denying him meaningful access to courts. (ECF No. 1). Murphy also filed a motion for stay of execution. (ECF No. 6). Defendants opposed Murphy's stay request but have not yet answered the complaint. (ECF No. 7). For the reasons discussed below, the Court will deny Murphy's motion to stay.

### I. Background

In June 2001, Murphy was convicted and sentenced to death by a Texas jury for the capital murder of 80-year-old Bertie Cunningham. Both the Texas Court of Criminal Appeals and the United States Supreme Court affirmed Murphy's conviction and sentence on direct appeal.

*Murphy v. State*, 112 S.W.3d 592 (Tex. Crim. App. 2003); *Murphy v. Texas*, 541 U.S. 940 (2004). Thereafter, Murphy unsuccessfully sought state and federal habeas corpus relief, culminating in the Supreme Court's denial of his petition for certiorari review on February 25, 2019. *Murphy v. Davis*, 139 S. Ct. 1263 (2019). On April 21, 2023, the trial court issued an order setting Murphy's execution date for October 10, 2023.

On September 26, 2023, Murphy filed his first civil-rights complaint in this Court, challenging the constitutionality of Texas's postconviction DNA testing procedures; he also filed a motion for stay of execution. That case is currently pending. *Murphy v. Jones*, No. 1:23-cv-01170-RP (W.D. Tex. Oct. 6, 2023).

## II. Murphy's Complaint

On October 4, 2023, six days before his scheduled execution, Murphy filed the instant civil-rights action. He argues that the drug Defendants would use to execute him, pentobarbital, is "fire-blighted," expired, and therefore constitutes an unconstitutional method of executing him.

Murphy alleges the following: On August 25, 2023, a fire broke out at the Texas Department of Criminal Justice (TDCJ)'s Huntsville Unit, which is where Murphy states TDCJ stores the pentobarbital they use for executions. Murphy states that the fire took 10 hours to control, and that the exposure to high heat—close to 1800° Fahrenheit—smoke and water likely caused the pentobarbital to degrade significantly and turn into an "entirely different chemical." Murphy states that he has filed an initial Public Information Act (PIA) request regarding the condition of the pentobarbital on September 8, 2023. After no response, Murphy filed another PIA request on September 19, 2023. TDCJ responded that they were still working on Murphy's initial request. On September 22, 2023, TDCJ notified Murphy that they had requested a decision from Texas's Office of the Attorney General (OAG) regarding the releasability of the information.

Murphy further alleges that, even if the drugs were not damaged in the fire, TDCJ nonetheless continues to use pentobarbital that has long exceeded its Beyond Use Date (BUD). Murphy states that some of TDCJ's vials of pentobarbital are 900 days old and the rest are over 250 days old. Murphy further asserts that the pH of TDCJ's pentobarbital has never been tested; that TDCJ's means of extending the BUD of its pentobarbital supply is unscientific and invalid; that TDCJ is violating numerous state laws through its use of expired pentobarbital; and that Murphy has no remedy for these statutory and constitutional violations in state court.

Murphy seeks the following relief: (1) a preliminary injunction of Defendants' use of drugs affected by the Huntsville fire in Murphy's October 10th execution; (2) a preliminary injunction of Defendants' use of expired pentobarbital in Murphy's execution; (3) an order compelling discovery of documents related to the effects of the Huntsville fire; (4) a declaration that use of expired drugs affected by the Huntsville fire violates Murphy's constitutional rights; and (5) a permanent injunction enjoining Defendants from using of "such drugs" in Murphy's execution. He also asks this Court to stay his upcoming execution date pending a resolution of his civil-rights action. (ECF No. 6.)

Defendants oppose Murphy's motion to stay, arguing Murphy's free-standing challenge to Texas's lethal injection protocol should be summarily denied as dilatory and time-barred; his claims regarding state-law violations are also time-barred; his challenge to TDCJ's execution procedure is unexhausted; his Eighth Amendment claim is meritless because a lab report performed after the Huntsville fire shows the execution drugs remain potent and sterile, his BUD claim is foreclosed by circuit precedent; his state-law and equal protection claims are non-cognizable and factually deficient; his access to court claim is meritless; and he will not suffer irreparable harm. (ECF No. 7.)

### III. <u>Analysis</u>

Under 28 U.S.C. § 2251(a)(1), a federal court has inherent discretion when deciding whether to stay an execution. *See Nken v. Holder*, 556 U.S. 418, 434 (2009). However, "a stay of execution is an equitable remedy, and an inmate is not entitled to a stay of execution as a matter of course." *Hill v. McDonough*, 547 U.S. 573, 583-84 (2006); *Murphy v. Collier*, 919 F.3d 913, 915 (5th Cir. 2019). In deciding whether to stay an execution, a court must consider: (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay;[1] (3) whether issuance of the stay will substantially injure the other party interested in the proceeding; and (4) where the public interest lies. *Nken*, 556 U.S. at 425-26. As explained below, these factors support denying the stay of execution.

**A.    <u>Likelihood of Success on the Merits</u>**

Murphy fails to meet his burden under the first *Nken* factor. Of the stay-of-execution factors, the likelihood of success is often "the most critical." *Nken*, 556 U.S. at 434. Though the movant in a capital case "need not always show a probability of success on the merits, he must present a substantial case on the merits when a serious legal question is involved and show that the balance of equities [i.e. the other three factors] weighs heavily in favor of granting the stay." *Celestine v. Butler*, 823 F.2d 74, 77 (5th Cir. 1987) (per curiam).

**1.    <u>Execution Method (Claim 1)</u>**

As an initial matter, the Court is persuaded that Murphy's facial attack on TDCJ's use of

---

[1] The Court notes that, in a capital case, the second *Nken* factor—the possibility of irreparable injury—"weighs heavily in the movant's favor." *O'Bryan v. Estelle*, 691 F.2d 706, 708 (5th Cir. 1982) (per curiam). But an applicant is not entitled to a stay "[as] a matter of right, even if irreparable injury might otherwise result to the appellant." *Nken*, 556 U.S. at 427 (internal quotation marks omitted). Although the death penalty is irreversible, there must come a time when the legal issues "have been sufficiently litigated and re-litigated so that the law must be allowed to run its course." *O'Bryan*, 691 F.2d at 708 (quoting *Evans v. Bennett*, 440 U.S. 1301, 1306 (1979)).

pentobarbital that is allegedly expired is time-barred.[2]  However, even if the claim is not time-barred, both it and the "fire-blight" claim are meritless.  The Supreme Court has adopted two elements for a method of execution claim: (1) the method of execution must first "present[ ] a risk that is '*sure or very likely* to cause serious illness and needless suffering,' and give rise to 'sufficiently *imminent* dangers'" and (2) the plaintiff "must identify an alternative that is 'feasible, readily implemented, and in fact significantly reduce[s] a substantial risk of severe pain.'"  *Glossip v. Gross*, 576 U.S. 863, 877 (2015) (quoting *Baze v. Rees*, 553 U.S. 35, 46 47 (2008)).

Murphy's allegations that the Huntsville fire damaged TDCJ's pentobarbital supply is purely speculative and only supported by Murphy's "information and belief." (ECF No. 1 at 5.)  Murphy provides no independent evidence showing that TDCJ stores its pentobarbital in the Huntsville Unit or that, even if stored there, the drug was impacted by the fire.  Further, Defendants attached to their response a laboratory report, dated September 21, 2023, showing two lots of pentobarbital that passed potency and sterility tests.  (ECF No. 7-1 at 3-4.)  While it is unclear from the record whether this report encompasses all of the pentobarbital currently in TDCJ's possession and if the drugs tested are the ones to be used in Murphy's execution, it does undermine Murphy's argument that all of TDCJ's pentobarbital was damaged in the Huntsville fire.  As a result, Murphy's claim that the so-called "fire-blighted" pentobarbital is sure or very-likely to cause serious illness or suffering is meritless.

Murphy has also failed to show that Texas's use of allegedly-expired pentobarbital is likely to cause serious illness and needless suffering.  The Fifth Circuit has denied relief in substantially similar cases.  *See Whitaker v. Collier*, 862 F.3d 490, 497-99 (5th Cir. 2017) (holding that

---

[2]   A two-year limitations period exists for the relevant portions of Texas's execution protocol.  *See Whitaker v. Collier*, 862 F.3d 490, 495 (5th Cir. 2017).  Despite recent changes to an unrelated portion of the Texas protocol, the core issues at play have been available to Murphy since 2012, at least.  *See id.* at 496.  Similarly, any claims based on state law accrued long ago.

allegations that use of compounded pentobarbital after its BUD risks sever pain was speculative and insufficient to survive a motion to dismiss); *see also Battaglia v. Collier*, No. 18-70005 (5th Cir. Feb. 1, 2018) (unpublished per curiam) (denying motion for stay of execution based on claims of the state failed to conduct adequate testing of lethal injection drugs).

In *Whitaker*, the Fifth Circuit addressed almost identical claims and found that concerns about degraded pentobarbital amounted to pleading hypothetical risks. *Whitaker*, 862 F.3d at 501. The district court in *Whitaker* considered the possible degradation of pentobarbital and found as follows:

> The plaintiffs made some assertions about the therapeutic use of old pentobarbital but did not plead any facts about the rate of degradation of compounded pentobarbital. . . . Texas administers two and a half times the amount of the drug needed to kill a person. Alleged complications that develop days or years after a therapeutic dose does not establish that Williams or Whitaker will face an intolerable risk of pain during the score of minutes it takes for the lethal dose to kill them.
>
> Williams and Whitaker seem to claim that there is something inherently wrong with using compounded pentobarbital after the BUD. The BUD merely approximates how long a drug is guaranteed to be reliable; its passage does not necessitate a change in the drug's reliability nor does it establish that the pain plaintiffs will suffer will be more cruel in character or intensity.

*Whitaker v. Livingston*, No. H-13-2901, 2016 WL 3199523, at *8 (S.D. Tex. 2016). The Fifth Circuit affirmed and found the prisoners' "assertion fail[ed] to reach the Eighth Amendment bar on unnecessarily sever pain that is sure, very likely, and imminent." *Whitaker*, 862 F.3d at 498.

Murphy's claims are similarly based on hypothetical concerns and speculation about possible injury. A plaintiff "must make factual allegations as to the substantial risk of the severe pain." *Id.* at 499 (citing *Glossip*, 576 U.S. at 877). It is not sufficient to request "additional testing . . . to identify an otherwise unknown risk . . . ." *Id*. Again, the plaintiff must show the execution method protocol is "sure or very likely to cause serious illness and needless suffering." *Baze*, 553

U.S. at 50. Murphy assumes the pentobarbital is beyond its use date and degraded. But the testing provided by TDCJ shows that at least two lots of their drug supply are potent and sterile. There is nothing in the record to support Murphy's allegation that TDCJ's current execution method is sure or very likely to cause needless suffering and illness.[3] As a result, Murphy has failed to make a strong showing that he is likely to succeed on the merits of either of his execution-method claims.

### 2.     State Law (Claim 2)

Murphy next claims that Defendants' management of pentobarbital violates state laws regulating the "procurement, prescription, selection, and administration of drugs" that ensure such drugs are "safe and effective for its intended use." Murphy argues that Defendants' violation of state law denies him the right to due process under the Fourteenth Amendment. Murphy further argues that Defendants violated the Equal Protection clause by treating death-sentenced and other-sentenced prisoners differently by exempting death-sentenced prisoners from pharmaceutical and controlled-substances laws when it is time to execute them.

Murphy fails to make a strong showing that these claims will succeed on the merits. First, Murphy filed this complaint pursuant to 42 U.S.C. § 1983, under which a person must allege a violation of his federal or constitutional rights by a person acting under color of state law. 42 U.S.C. § 1983; *James v. Tex. Collin Cnty.*, 535 F.3d 365, 373 (5th Cir. 2008). As a result, "violation of state law alone does not give rise to a cause of action under § 1983." *Williams v. Treen*, 671 F.2d 892, 900 (5th Cir. 1982). Murphy attempts to work around this by claiming that

---

[3]    Murphy also fails to meet the second element of the *Glossip* test: he fails to propose an alternative method of execution that is feasible, readily implemented, and significantly reduces a substantial risk of severe pain. *See Bucklew v. Precythe*, 587 U.S. ---, 139 S. Ct. 1112, 1128-29 (2019) ("[W]e see little likelihood that an inmate facing a serious risk of pain will be unable to identify an available alternative–assuming, of course, that the inmate is more interested in avoiding unnecessary pain than in delaying his execution.") Murphy proposes "[t]he use of pentobarbital that was not exposed to extreme heat, smoke, or water, and whose stability is confirmed by testing, is a simple, feasible, and readily implemented alternative procedure." (ECF No. 1 at 29-30). Based on the record before the Court, it appears that this "alternative" is exactly what TDCJ will use when executing Murphy.

the violation of state laws thereby violates his constitutional right to due process, but provides not support that a state not following their own pharmacology laws thereby violates the Constitution's Due Process Clause. This claim is not meritorious.

Murphy next argues that Defendants are violating the Equal Protection clause by treating death-sentenced and other-sentenced prisoners differently. The Equal Protection Clause requires that "all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (citing *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). Death-sentenced and other-sentenced prisoners are not similarly situated with respect to being executed with pentobarbital. Again, Murphy does not make a strong showing that these claims would succeed on the merits.

### 3.  Access to Courts (Claims 3-5)

In Murphy's final claims, he argues the Texas law creates a liberty interest in being free from torture or ill treatment, but fails to supply an adequate remedy for the vindication of that liberty interest once an execution has been scheduled. He also claims he cannot meaningfully pursue his claims in state court because the state courts will not entertain them, and that because of these issues, this Court has an independent obligation to provide a remedy under general federal question jurisdiction.

To prevail on his access to the courts claim, Murphy must "show a potential Eighth Amendment violation. One is not entitled to access to the courts merely to argue that there might be some remote possibility of some constitutional violation." *Whitaker v. Livingston*, 732 F.3d 465, 467 (5th Cir. 2013). Rather, a plaintiff must show an actual injury and an actual legal claim to establish a valid access-to-courts claim. *Lewis v. Casey*, 518 U.S. 343, 350-52 (1996); *see also Turner v. Epps*, 460 F. App'x 322, 328 (5th Cir. 2012) (unpublished) (explaining that "an inmate

who brings a § 1983 claim based upon his right of access to the courts must be able to show that the infringing act somehow defeated his ability to pursue a legal claim.").

As noted above, Murphy has failed to demonstrate anything more than a hypothetical possibility of an Eighth Amendment violation. Moreover, Murphy acknowledges that other death row inmates are currently pursuing similar state law claims in a civil suit filed in Travis County. (ECF No. 1 at 17-21). Murphy has thus failed to point to any actual claim that he was prevented from lodging in a court of law. He therefore fails to satisfy a necessary precondition of his access to the courts claim, and is unlikely to succeed on the merits of that claim.

B.   **Other Interested Parties and the Public Interest**

Murphy's "inability to establish a likelihood of success on the merits is, effectively, dispositive of the motion for stay." *Crutsinger v. Davis,* 930 F.3d 705, 707 (5th Cir. 2019). The Court, however, notes that the final two *Nken* factors also weigh against Murphy.

To start, the interests of the State in enforcing valid criminal sentences outweigh Murphy's request for more time. "[E]quity must be sensitive to the [s]tate's strong interest in enforcing its criminal judgments without undue interference from the federal courts." *Crutsinger*, 930 F.3d at 709 (citing *Hill*, 547 U.S. at 584). Granting Murphy a stay at this late juncture would clearly inhibit the State's vested interest in carrying out an otherwise valid sentence and would impair the finality of the state court's criminal judgment. When "lengthy federal proceedings have run their course"—as they have in this case—"finality acquires an added moral dimension." *In re Fed. Bureau of Prisons' Execution Protocol Cases*, 955 F.3d 106, 126 (D.C. Cir. 2020) (citing *Calderon v. Thompson*, 523 U.S. 538, 556 (1998)).

Further, the issuance of the stay would also impose a substantial injury to another party interested in this proceeding—the victim's family members. *Bucklew v. Precythe*, 139 S. Ct. 1112,

1133 (2019) (explaining that "both the State and the victims of crime have an important interest in the timely enforcement of a [death] sentence."); *United States v. Vialva*, 976 F.3d 458, 462 (5th Cir. 2020) (finding the public has an interest "in timely enforcement of the death sentence."). These family members have already had to endure a lengthy appellate process and delays in the scheduling of the execution, and have a substantial interest in obtaining some closure to this case. Accordingly, three of the four *Nken* factors weigh against granting Murphy's Motion to Stay Execution.

### IV. Conclusion and Order

The Court finds that Murphy has not met the requirements for a stay of execution. Among other things, Murphy failed to demonstrate a likelihood of success on the merits or that the interests of the public weighs in his favor.

It is therefore **ORDERED** that Murphy's Motion to Stay Execution, filed October 5, 2023 (ECF No. 6), is **DENIED**.

**SIGNED this the 6th day of October, 2023.**

**ROBERT PITMAN**
**UNITED STATES DISTRICT JUDGE**